UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| BRET DAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 23-cv-3158 |
| ) | |
| TAYLORVILLE CORRECTIONAL ) | |
| CENTER, *et al.* ) | |
| ) | |
| Defendants. | |

**ORDER**

Plaintiff proceeds pro se, pursuant to 42 U.S.C. § 1983, on Eighth Amendment claims for deliberate indifference to his serious medical needs.

The Court entered an Order (Doc. 13) on September 5, 2023, granting in part Plaintiff's request for a Court-appointed attorney. The Court directed the Pro Bono Coordinator to search for volunteer counsel for Plaintiff.

Unfortunately, the Court has been unsuccessful in its attempts to recruit counsel to represent Plaintiff in this case. The presence of counsel for Plaintiff would have greatly assisted the Court as well as Plaintiff.

The law is clear that this Court does not possess the authority to require an attorney to accept *pro bono* appointments on civil cases such as this. *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007). The most that the Court may do is to ask for volunteer counsel. *Jackson v. County of McLean*, 953 F.2d 1070, 1071 (7th Cir. 1992) (holding that it is

a "fundamental premise that indigent civil litigants have no constitutional or statutory right to be represented by counsel in federal court.").

The Court's Pro Bono Coordinator posted the need for counsel in this case on the Court's website as well as the Seventh Circuit's website. The Pro Bono Coordinator also directly contacted ten attorneys/law firms who are on the Court's *pro bono* attorney list in this area, and no one agreed or volunteered to represent Plaintiff. Unfortunately, this result is common, even though the Pro Bono Coordinator tries to space out the requests.

The Pro Bono Coordinator also sent a request to the 1,500-plus attorneys who are members of the Seventh Circuit Bar Association asking for a volunteer to represent Plaintiff. Not a single attorney agreed to represent Plaintiff or even expressed a general interest about the case. The Court notes the number of counsel that it contacted not to disparage the attorneys who could not represent Plaintiff, but to show the scope of its attempts to recruit counsel.[1]

Recruiting *pro bono* counsel in this District is difficult. The need for *pro bono* attorneys far exceeds the supply. *McCaa v. Hamilton*, 959 F.3d 842, 845 (7th Cir. 2020) ("District courts are thus inevitably in the business of rationing a limited supply of free lawyer time."). Although "[a]lmost everyone would benefit from having a lawyer, [] there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases. *DeWitt v. Corizon, Inc.*, 760 F.3d 654, 657 (7th Cir. 2014)(internal quotation omitted); *Mejia v. Pfister*, 2021 WL 647085, * 4 (7th Cir. Feb. 19, 2021)("And, for its part,

---

[1] The Court thanks its volunteer counsel, whom the Court asks to take cases frequently and who volunteer their valuable time when their practice allows them to be available.

the district court found itself having to make a choice about how best to allocate scarce resources, for it remains the sad reality that there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.")(internal quotation omitted).

There are nearly 700 *pro se* prisoner cases pending in the Central District of Illinois at this time, with approximately five hundred new *pro se* prisoner cases filed each year. Nearly all *pro se* prisoners request the appointment of *pro bono* counsel several times throughout their cases. Even if only ten percent of *pro se* prisoners need counsel under *Pruitt*, the District would need roughly fifty attorney volunteers every year to avoid a single attorney being appointed to multiple volunteer cases. The Court's understanding is that about seventy-five percent of the attorneys on the District's volunteer list have already taken at least one case in the past eight years.

Additionally, the supply of volunteer attorneys appears to be shrinking, despite recruitment efforts. In the Court's experience, even the attorneys who have agreed to accept *pro bono* appointments in the past are more hesitant, or simply decline, to accept future appointments. *Eagan*, 987 F.3d at 699-700 (Easterbrook, J., dissenting) (noting the limited and shrinking attorney pool in the Central District of Illinois and stating that "[w]hen we compel a judge to divert the resources of the bar to weak claims such as Eagan's, we reduce the likelihood that other persons will receive adequate legal assistance."). In essence, the situation seems to be getting worse, not better.

An attorney's reluctance to volunteer is understandable. These cases can be a professional and a financial burden upon the attorneys who regularly practice in this Court. Most firms located within the Central District of Illinois are small firms. As such,

losing an attorney for several weeks for trial preparation and trial is a burden not only financially but also on the whole firm's ability to represent its paying clients. Further, no statutory basis exists for compensating *pro bono* counsel for fees or expenses unless *pro bono* counsel wins the case, which is extremely rare. The Central District of Illinois provides reimbursement for up to $1,000 in out-of-pocket expenses, but that is typically a drop in the bucket compared to the full costs of taking on a pro bono case.

Additionally and too often, recruited counsel is rewarded for their efforts with a legal malpractice suit, a complaint letter being sent to the ARDC, or both. *McCaa*, 959 F.3d at 845 (agreeing with the district court that the decision to try to recruit counsel can and should be informed by the realities of recruiting counsel in the district); *Eagan*, 987 F.3d at 699-700 (Easterbrook, J. dissenting) (noting that legal assistance is not available in unlimited amounts, especially in the Central District of Illinois where the legal practices are small and where firms lack the resources generally required to accept these types of cases). The Court is not saying that Plaintiff here *would* take such actions against a *pro bono* attorney if Plaintiff did not prevail, but the Court understands counsel's hesitancy to take on these cases based on these events occurring to them or their colleagues in other cases. Regardless of the reason, the Court has found no takers for this case.

Therefore, although the Court tried to find volunteer counsel for Plaintiff, the Court now informs him that he will need to represent himself going forward in this case.

Plaintiff's most pressing task at this time is to file an amended complaint, if he wishes to do so. Plaintiff's deadline to amend is December 5, 2023, as stated in Order (Doc. 13). Failure to amend will result in dismissal of this action without prejudice.

IT IS THEREFORE ORDERED:

1. The Court's search for a volunteer lawyer for Plaintiff having proven unsuccessful, Plaintiff must continue to proceed representing himself.

Entered: October 31, 2023.

*s/Michael M. Mihm*
MICHAEL M. MIHM
UNITED STATES DISTRICT JUDGE
